## METROPOLITAN BOARD OF ZONING APPEALS OF MARION COUNTY, Appellant (Respondent),

v.

## AVIS RENT A CAR SYSTEM, INC., Appellee (Petitioner).

No. 49A02–9002–CV–00087.

Court of Appeals of Indiana, Second District.

July 22, 1991.

David F. Rees, City–County Legal Div., Indianapolis, for appellant.

James E. Hughes, Sommer & Barnard, Indianapolis, for appellee.

BUCHANAN, Judge.

### CASE SUMMARY

Appellant-respondent, The Metropolitan Board of Zoning Appeals of Marion County (The Board), appeals the judgment of the trial court which determined that Avis Rent A Car System, Inc. (Avis) was entitled to the issuance of a permit from The Board for the placement of a pole sign on its real estate in Indianapolis.

We affirm.

## FACTS

The undisputed facts reveal that Avis operated a retail sales outlet located at the intersection of Lafayette Road and Georgetown Road in Indianapolis. Avis desired to place a pole sign on its property, so in 1987, it applied to The Department of Metropolitan Development (Development Department) for a zoning variance to obtain a permit to construct its sign, but that application was denied. In its judgment, the Development Department determined that Avis is located in an integrated center, which is a zoning class in the Indianapolis zoning scheme that may be coupled with the establishment of any commercial zoning. The Development Department decided that the limit for the number of signs had been reached as there were already three other pole signs in the center where Avis is located. It also determined that Avis' entrances and exits were subjects of cross-easements with the abutting property owners, and there was no "direct access" to the Avis property, which is also a prerequisite to the issuance of a pole sign permit.

Avis appealed the Development Department's decision to The Board, and did not renew its request for a zoning variance. Rather, Avis contended that a variance was not a prerequisite for the construction of its pole sign. The Board affirmed the Development Department's decision, and Avis appealed to the Marion Superior Court. The court reversed The Board and ordered the Development Department to issue Avis a permit for the sign's construction.

The trial court's order provided in relevant part that:

"2. *The free-standing Avis building is near, but separate from, other free-standing buildings in the area in which other businesses unrelated to Avis are operating.* The other parcels of real estate that either abut the Real Estate or that are in the general area formed by the triangle of Lafayette Road, Georgetown Road and Interstate 65 *are all separately owned (collectively with the Real Estate, the 'Area'). There is no common ownership of the parcels in the Area. The [Department] con-sidered the Area to be an 'integrated center' as that term is defined in Section 14.06–3(3) of the Sign Regulations of Marion County, Indiana (the 'Sign Regulations').*

3. All of the Area is zoned C–5. The ordinance passed Septemaber 24, 1973 establishing that zoning (the 'Ordinance') does not designate, condition or limit the zoning as an integrated center.

4. *Access to and egress from the Real Estate is from and to both Lafayette and Georgetown Roads. Both roads are primary thoroughfares.*

5. ... The Department interpreted 'direct access' to preclude any driveway that in any part includes an easement.

. . . . .

8. *The Board's decision is illegal because the Real Estate is not part of an integrated center. The Ordinance does not expressly restrict the C–5 zoning and no such restriction may be implied to the express grant. The restrictions in the Sign Regulations for integrated Centers thus cannot apply to the Real Estate.*

9. Moreover, since there is neither one building in which there are a number of individual, nonrelated and separately operated uses in the Area nor common ownership of the Area, *the Area cannot be deemed or considered an integrated center since it does not meet the definition of an integrated center in Section 14.06(3) of the Sign Regulations.*

10. *The Board's decision is further illegal because there is direct access to and from the Real Estate on both Georgetown and Lafayette Roads. 'Direct Access' as that term is used in Table 14.03(19) of the Sign Regulations is not limited, restricted or modified by the existence of the cross-easement.*

11. *The fact that Avis earlier requested a variance for a pole sign on the Real Estate does not in any way constitute an admission or recognition that a pole sign is not otherwise proper, nor does it estop Avis from pursuing the Case and this appeal of the Case.*

The Court therefore reverses the decision of the Board, enters judgment for Avis and orders that the Department issue Avis a permit for a pole sign on the Real Estate as Avis has requested and not further interfere with Avis' right to such a pole sign."

*Record* at 223–25 (emphasis supplied).

## ISSUES

The Board raises three issues for our consideration, which we restate as:

1. Did the trial court err in determining that the Avis property was not within a commercial area zoned as an integrated center?

2. Was there "direct access" to Lafayette Road and Georgetown Road from Avis' property?

3. Did the trial court properly determine that The Board erroneously concluded that Avis was estopped to deny that it needed a variance in order to erect a pole sign?

## DECISION

ISSUE ONE—Was the Avis property located within a commercial area zoned as an integrated center?

PARTIES' CONTENTIONS—The Board argues that the property occupied and leased by Avis is a part of an integrated center within the meaning of the Marion County zoning ordinance which precludes Avis from erecting a pole sign. Avis responds that its location is not part of an integrated center, so it is entitled to a permit to construct its own pole sign.

CONCLUSION—The Avis property was not part of an integrated center as defined by the Marion County Ordinance (the sign regulations).

■ The relevant portions of the sign regulations in the commercially-zoned area in which Avis is located are essential to our decision. The provisions, contained in Section 14.06–3, provide:

"[14.06–3] (1). NUMBER OF SIGNS AND SIGN SURFACE AREA—in addition to wall signs, *not more than one*

sign structure shall be permitted for each grade level use.

. . . . .

i. NUMBER OF INTEGRATED CENTER SIGNS—one sign oriented to the principal frontage of the site. In the case of a site located with frontage on two street[s] shown. as primary or secondary thoroughfares in the Official Thoroughfare Plan, one addition[al] sign may be oriented to the secondary frontage.

. . . . .

(3) SIGNS FOR INTEGRATED CENTERS AND INDUSTRIAL PARK—in addition to the business signage permitted in (1) above, *integrated centers— comprising a number of individual, non-related and separately operated uses in one building and sharing common site facilities; or, one or more buildings containing non-related and separately operated uses, occupying a site under one ownership,* and utilizing one or a combination of common site facilities such as driveway entrances, parking areas, maintenance, and similar common services—and industrial parks may have identification signs as specified below...."

*Record* at 178–79 (emphasis supplied).

The above provisions indicate Avis is not located in an integrated center, inasmuch as subsection three quoted above expressly provides that a business is located within such a center when the establishments are *either* individual, non-related and separately operated uses in *one* building sharing common site facilities, *or* there are one or more buildings occupying a site under *one* ownership.

This court is bound to interpret a zoning ordinance as it is written. *Board of Zoning Appeals of Elkhart County v. New Testament Bible Church, Inc.* (1980), Ind. App., 411 N.E.2d 681. Our review of The Board's decision is limited to a determination of whether The Board's action was illegal, and we presume that The Board's decision as an administrative agency with expertise in zoning matters is correct. *Town of Beverly Shores v. Bagnall* (1991),

Ind.App., 570 N.E.2d 1363; *Town of Merrillville Bd. of Zoning Appeals v. Public Storage, Inc.* (1991), Ind.App., 568 N.E.2d 1092; *Boyle v. Kosciusko County* (1991), Ind.App., 565 N.E.2d 1157; *Porter County Plan Com'n v. Burns Harbor Estates* (1982), Ind.App., 437 N.E.2d 1053; *Miller v. Board of Zoning Appeals of City of Rochester, Fulton County* (1979), Ind.App., 397 N.E.2d 1091.

Contrary to The Board's position that Avis is located in an integrated center, the record before us unequivocally indicates that there are *several* buildings and *several* ownerships at the Avis location, *Record* at 88–92,[1] and all the other business maintain their own signs. If this location was "integrated," as The Board would have us believe, each and every business at the site would be in violation of the sign regulations, and The Development Department would certainly have denied the permits for the construction of those signs.

The Board's decision was expressly based upon the language of Section 14.06–3(3)i of the Sign Regulations. It said:

"Thus, *pole sign identification for development within the integrated center is regulated by Section 14.06–3(3)i of the Sign Regulations of Marion County, Indiana, ... which limits pole sign identification to one primary pole sign and one secondary sign if the property has frontage on two thoroughfares.* The subject integrated center is entitled to pole sign identification on Lafayette and Georgetown Road, each of which were permitted and erected prior to the development of petitioner's property."

*Record* at 51.

The Board was mistaken as a matter of law because the undisputed facts indicate Avis is not part of an integrated center. Its business is surrounded by several buildings which are owned by several different owners. So, the judgment of The Board was illegal and the trial court properly reversed that decision.

ISSUE TWO—Was there "direct access" to Lafayette Road and Georgetown Road from Avis' property?

PARTIES' CONTENTIONS—The Board claims that the existence of an easement on the property demonstrates that there is no direct access from Avis' property to a public street. Avis replies that the mere existence of an easement across the property does not strip Avis of its obvious direct access to a public roadway.

CONCLUSION—Avis has direct access to and from a public street.

◼ The Board claims there is no "direct access" from Lafayette and Georgetown Roads to the Avis property because of the existence of easements on that right of way, but supply us with no authority for that proposition. Section 14.03(19) of the Marion County zoning ordinance provides that:

"In addition to other business signs, which may be permitted for individual uses, one pole sign shall be permitted for any individual use which is an entity of commercial development held in either private ownership or long-term lease, and which meets all of the requirements of the zoning district in which it is located. Such requirements shall include *direct access to a public street from that property....*"

*Record* at 163 (emphasis supplied).

"Direct access" is not defined in the ordinance, and there is no reported case in Indiana construing this term. In *Black's Law Dictionary* 12 (5th ed. 1979), the word "access" is defined as:

"[T]he means, power, or opportunity of approaching ... or passing to and from. In real property law, the term 'access' denotes the right vested in the owner of land which adjoins a road or other highway *to go and and return from his own land to the highway without obstruction.*"

(Emphasis supplied).

Following the presentation of evidence, the trial court determined that because

---

1. At the hearing, Avis introduced a number of maps and photographs which show the location and names of the various businesses surrounding the Avis building.

there is no limiting language contained in the sign regulations pertaining to easements on the land, The Board erroneously concluded that the existence of an easement prevented "direct access" onto Avis' property from Georgetown and Lafayette Roads. *Record* at 225.

Photographs of the area indicate that there are two broad curb cuts from Avis to Lafayette and Georgetown Road. *Record* at 92. Motorists entering the location do so from both of those roads without any visible obstruction. Applying the common, ordinary definition of "direct access" to the facts before us, the mere existence of a use-easement in itself does not obstruct the ingress or egress onto Avis' property. The trial court therefore properly reversed the Board's determination that there was no direct access to and from Avis' property.

ISSUE THREE—Did the Board erroneously conclude that Avis was estopped to deny that it needed a zoning variance in order to construct its pole sign?

PARTIES' CONTENTIONS—The Board contends that because Avis sought, and was denied a zoning variance for a separate pole sign at its site in 1987, Avis is now estopped from arguing that no variance was ever needed. Avis responds that it is not estopped from claiming that no variance is needed, even though it applied for one at an earlier time.

CONCLUSION—Avis' previous request for a zoning variance does not estop Avis from later arguing that the variance was not necessary.

 In *Metropolitan Dev. Comm'n of Marion County v. Hair* (1987), Ind.App., 505 N.E.2d 116, this court disposed of a similar argument. Judge Sullivan concluded that:

> "Subtleties of case by case analysis aside, it would seem only logical and proper to reject the Commission's estoppel argument. A land owner should be entitled to seek a peaceful utilization of his property even to the extent of seeking a governmental stamp of approval which the owner deems unnecessary. One might reasonably try to avoid the risk of a shut-down of his business operation pending a prolonged and expensive permanent injunction suit. *See Board of Zoning Appeals v. Heyde* (1974), 160 Ind.App., 165, 310 N.E.2d 908. Assessing his various options he might well decide to 'not fight City Hall' and to proceed along the lines of accommodation and compromise. Persons of strong principle and/or unlimited funds might choose otherwise, but we will not apply a doctrine of estoppel or any other issue preclusion concept to the facts before us. *See Theta Kappa, Inc. v. City of Terre Haute* (1967), 141 Ind.App. 165, 228 N.E.2d 34 (Appellate Court denied Motion to Dismiss Appellant's Petition for Rehearing which asserted that filing petition for variance subsequent to appeal mooted Appellant's contention that use was in conformity with zoning classification).
>
> *The Hairs' previous request for a variance did not estop them from claiming in the subsequent action brought by the Commission that their properties came within the nonconforming use exception to the zoning ordinance...."*

*Id.* 505 N.E.2d at 120 (emphasis supplied).

In light of *Hair*, we see no estoppel.

Judgment affirmed.

SHIELDS and BAKER, JJ., concur.